2006 ME 17

**Julie A. CONNOLLY, individually and o/b/o her daughter**

v.

**John S. CONNOLLY.**

Supreme Judicial Court of Maine.

Submitted On Briefs: Nov. 29, 2005.

Decided: Feb. 21, 2006.

Frank D'Alessandro, Esq., Judith A. Plano. Esq., Pine Tree Legal Assistance, Inc., Portland, for plaintiff.

John Alsop, Esq., Alsop, Mohlar & Ketterer, Norridgewock, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, LEVY, and SILVER, JJ.

Majority: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, LEVY, and SILVER, JJ.

Concurrence: SAUFLEY, C.J., and LEVY J.

CLIFFORD, J.

[¶ 1] Julie A. Connolly appeals from an order for protection from abuse entered in the District Court (Waterville, *Worth, J.*) on her complaint filed individually and on behalf of her daughter against her husband, John S. Connolly. Julie contends that the court erred in denying her a hearing, and, in the absence of a hearing, in issuing an order without the agreement of both parties. We agree with Julie and vacate the judgment.

## I. BACKGROUND

[¶ 2] On February 8, 2005, Julie filed a complaint for protection from abuse against John in the District Court pursuant to 19–A M.R.S. § 4005 (2005). The court (*Westcott, J.*) granted Julie a temporary order for protection from abuse on the same day. 19–A M.R.S. § 4006(2) (2005).

[¶ 3] On the date of the hearing scheduled pursuant to 19–A M.R.S. § 4006(1) (2005), the court conducted an in-chambers conference in the matter. During the conference, John indicated that he would be willing to consent to an order prohibiting contact between the parties, as long as there was no finding of abuse and no prohibition on his possession of firearms. Julie, however, was not willing to consent to an order without an abuse finding and without a prohibition on John possessing firearms.

[¶ 4] Following the conference, and without conducting an evidentiary hearing, the court issued an amended order for protection from abuse dated May 12, 2005, which stated: "The Defendant has agreed to the following Order, which is made without findings of abuse." The order prohibited John from having any contact with Julie or her daughter, but did not prohibit John from possessing a firearm. This appeal by Julie followed the court's denial of her motion for a new trial filed pursuant M.R. Civ. P. 59.

## II. DISCUSSION

[¶ 5] Protection from abuse relief is governed by 19–A M.R.S. §§ 4001–4014 (2005). The statute provides, in pertinent part: "Full hearing. Within 21 days of the filing of a complaint, a hearing must be held at which the plaintiff must prove the allegation of abuse by a preponderance of the evidence." 19–A M.R.S. § 4006(1). Further, in *Shaw v. Packard*, 2005 ME 122, 886 A.2d 1287, we held that although section 4006(1) requires a hearing, the court has the discretion, for good cause, to schedule the hearing for a date later than twenty-one days after the filing of the complaint, even over the objection of one of the parties. *Id.* ¶ 11, 886 A.2d at 1290. Julie contends that, unless the parties agree to a consent order pursuant to 19–A M.R.S. § 4007(1) (2005), section 4006 requires the court to conduct an evidentiary hearing in protection from abuse matters to determine whether the defendant has abused the plaintiff, and that the court in this case impermissibly failed to do so.

[¶ 6] The interpretation of a statute, including whether or not the statute requires a hearing, is an issue of law that we review de novo. *Commerce Bank & Trust Co. v. Dworman*, 2004 ME 142, ¶ 7, 861 A.2d 662, 665. In determining the meaning of a statute, we look first to its

plain language. *Home Builders Ass'n of Me., Inc. v. Town of Eliot,* 2000 ME 82, ¶ 4, 750 A.2d 566, 569.

[¶ 7] The plain language of section 4006(1) unambiguously requires that the court conduct a hearing on the issue of whether "abuse" has occurred. Further, section 4007(1) also provides support for Julie's contention. It states:

> The court, after a hearing and upon finding that the defendant has committed the alleged abuse, may grant a protective order or, upon making that finding, approve a consent agreement to *bring about a cessation of abuse.* This subsection does not preclude the parties from voluntarily requesting a consent agreement without a finding of abuse.

19–A M.R.S. § 4007(1). Thus, in addition to the plain language of section 4006(1), the import of section 4007(1) is that a hearing is required in all cases except those in which the defendant agrees to a finding of abuse, or the plaintiff agrees to an order without a finding of abuse.[1]

[¶ 8] In this case the parties did *not* agree regarding the crucial finding of abuse. John would not agree to a protective order that contained a finding of abuse, and Julie would not agree to a protective order that did not contain a finding of abuse. Moreover, the parties disagreed as to what relief the order of the court should contain, and in particular, whether John should be prohibited from possessing a firearm. In the absence of an agreement on those essential issues, the court was required to conduct an eviden-tiary hearing and to make findings as to whether abuse occurred, and to make a determination about the relief requested. Accordingly, the court's failure to conduct an evidentiary hearing on Julie's complaint in the absence of the parties' agreement constitutes error. We vacate the judgment and remand the matter to the District Court for the purpose of conducting the hearing to which Julie is entitled, and, based on that hearing, to make the findings required by the statute.

The entry is:

Judgment vacated. Remanded to the District Court for further proceedings consistent with this opinion.

SAUFLEY, C.J., concurring, with whom, LEVY, J., joins.

[¶ 9] We join the Court's opinion in its entirety, but write separately to address the administrative difficulties facing the Maine trial courts that ultimately led to the trial court's decision in this case, which we must vacate.

[¶ 10] On the date of hearing, the parties before the court were both represented by counsel. Pending before the court was a complaint for protection from abuse filed by Julie against John and a similar complaint for protection from harassment also filed by Julie against John. Those complaints had been consolidated for hearing. In addition, the parties were engaged in the early stages of a divorce. This combination is not unusual in Maine's District Courts. A motion pending in the divorce

---

1. Indeed, implicit in any requirement that findings be made is that to promote judicial economy, the finding or findings need not be proved by testimonial or documentary evidence when both parties agree to those findings. *MP Assocs. v. Liberty,* 2001 ME 22, ¶ 28, 771 A.2d 1040, 1048–49 (quotation marks omitted) ("Stipulations fairly entered into are favored because they expedite a trial and eliminate the necessity of much tedious proof."); 1 Field, McKusick & Wroth, *Maine Civil Practice* § 16.5 at 326–27 (2d ed. 1970) ("[A]dmissions, stipulations, and other agreements entered into ... are binding upon the parties on the trial and on appeal. A party need not offer any evidence to prove a matter so admitted or stipulated, nor will evidence in contradiction of it be admitted.").

proceeding was still awaiting scheduling when the protection for abuse and protection from harassment matters came on for expedited hearing.

[¶ 11] On the date of that hearing, the sitting judge had a lengthy docket of other matters to be addressed. In addition, the judge, sitting in the District Court in Waterville on that date, does not sit there regularly.

[¶ 12] Prior to the hearing, John's attorney had moved to continue the matter because that attorney had a scheduling conflict later in the day. The motion to continue, not opposed by Julie's attorney, was denied before the date of hearing, not inappropriately so, given the need for expedited resolution of matters alleging threats of violence. Consequently, the parties appeared and were ready for trial on the protection matters, with witnesses in attendance and lawyers prepared to proceed. Unfortunately, the combination of scheduling and administrative circumstances brought the parties before the court on a date when the court would not have time to complete a hearing, and when the sitting trial judge would not be back to this particular District Court location for weeks or possibly months.

[¶ 13] Both parties expended financial and emotional capital in preparing for the hearing. The court, for its part, patiently explained to the parties the scheduling difficulties created by the caseload in that court.

[¶ 14] Ultimately, the trial court concluded that the best result for all would be the entry of a protection from abuse order, requiring John to stay away from Julie, but without a finding of abuse. The court's effort to find a resolution that moved the parties forward, yet could be accomplished within the limited resources of the District Court, was understandable. As we have said today, however, it is not acceptable. While the court correctly concluded that "[t]here isn't any entitlement to a *finding* of abuse," (emphasis added) what the court overlooked in the face of scheduling pressures was the fact that there *is* an entitlement to a hearing on a dispute regarding the existence of abuse. As the Court has held today, a petitioner in a protection from abuse matter cannot be forced by the court to "agree" to a no-abuse order. While it is possible that the court may not have found abuse after trial, depending on the evidence that was presented, that outcome could not have been ascertained without a hearing.

[¶ 15] In the end, the scheduling and administrative difficulties experienced in our District Court, where resources are insufficient to address all of the various matters that come before that court, cannot be allowed to truncate a litigant's opportunity to be heard. As the Maine court system makes efforts to reorganize its use of resources and to rethink the way cases are scheduled, we have great hope that the circumstances Julie Connolly found herself in here will not have to be repeated. Nonetheless, it is critical that all involved in the administration of justice in this State keep in mind the chronic lack of resources, and the very real effects it may have on the lives of Maine's citizens who look to the court for meaningful justice.